UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OCEAN BEAUTY SEAFOODS LLC, an Alaska limited liability company, and MICHAEL COULSTON, an individual,<br><br>Plaintiffs,<br><br>V.<br><br>PACIFIC SEAFOOD GROUP ACQUISITION COMPANY INC. d/b/a, Pacific Seafood Group and Pacific Seafood Group, Inc., an Oregon corporation,<br><br>Defendants. | No. 14-1072<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

COMES NOW, the Plaintiffs Ocean Beauty Seafoods LLC ("Ocean Beauty") and Michael Coulston ("Coulston") (together, the "Plaintiffs"), by and through their attorneys of record, Peterson Russell Kelly PLLC and by way of complaint against the above-captioned defendant, alleges as follows:

### I.   THE PARTIES

1.1. Plaintiff Ocean Beauty is, and at all relevant times herein was, a limited liability company formed under the laws of Alaska. The two members of Ocean Beauty are Bristol Bay Economic Development Corporation ("Bristol Bay") and Ocean Beauty Holdings, Inc. ("OBH"). Bristol Bay is a non-profit corporation duly organized and existing under the laws of

COMPLAINT - 1
Case No. 14-1072

PETERSON RUSSELL KELLY PLLC
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington 98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

Alaska with its principal place of business in Alaska. OBH is a corporation duly organized and existing under the laws of the State of Washington, with its principal place of business in Seattle, Washington.

1.2. Plaintiff Coulston is an individual residing in Pierce County, Washington.

1.3. Defendant Pacific Seafood Group Acquisition Company, Inc. ("Pacific Seafood") is an Oregon corporation doing business as Pacific Seafood Group. Upon information and belief, Pacific Seafood Group Acquisition Company, Inc. is not licensed to do business in Washington. Further, upon information and belief Pacific Seafood Group, Inc., the employer identified in the Employment Agreement which is the subject of this action, does not exist as an entity or a registered trade name in Oregon or Washington.

## II. JURISDICTION AND VENUE

2.1. Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation in the preceding paragraphs.

2.2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332.

2.3. There is complete diversity of citizenship between the parties.

2.4. Plaintiff Ocean Beauty is a citizen of Alaska and Washington within the meaning of 28 U.S.C. § 1332(c)(1).

2.5. Plaintiff Coulston is a citizen of Washington within the meaning of 28 U.S.C. § 1332(c)(1).

2.6. Defendant Pacific Seafood is a citizen of Oregon within the meaning of 28 U.S.C. § 1332(c)(1).

2.7. In actions seeking declaratory relief, the amount in controversy is determined by the "value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). The Ninth Circuit looks to the pecuniary effect an adverse declaration will have on either party to the lawsuit. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 405 (9th Cir. 1996).

COMPLAINT - 2
Case No. 14-1072

**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington 98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

2.8.     Defendant Pacific Seafood alleges that Plaintiffs are in violation of, and have breached the covenant not to compete at issue in this action.  Plaintiffs aver, based in part on Coulston's anticipated earnings as an Ocean Beauty employee and Ocean Beauty's anticipated revenue, as well as Plaintiffs' experience in matters of this type, that the pecuniary effect of a declaration adverse to Plaintiffs in this action will exceed $75,000.  Plaintiffs further aver, based in part on Coulston's alleged earnings for Defendant Pacific Seafood and Plaintiffs' experience in matters of this type, that Defendant Pacific Seafood seeks alleged damages in excess of $75,000.  Thus, Plaintiffs aver that the pecuniary effect of a declaration adverse to Defendant Pacific Seafood in this action will exceed $75,000.  Accordingly, Plaintiffs satisfy the jurisdictional amount in controversy requirement of this Court.

2.9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391.  Plaintiff Ocean Beauty and Defendant Pacific Seafood both conduct business in this District and a substantial part of the events giving rise to the claims at issue occurred in this District.

### III.    FACTUAL BACKGROUND

3.1.     Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation in the preceding paragraphs.

3.2.     Ocean Beauty is a large, vertically integrated seafood company with worldwide sourcing, company owned processing and distribution facilities, offering sales of fresh, frozen and smoked seafood products.  It has distribution facilities in seven western states and production facilities in Alaska and Oregon.

3.3.     According to its website Pacific Seafood is also a large, vertically integrated company which currently employs over 2500 people at 37 facilities with processing plants stretching along the Pacific coast with distribution facilities in seven western states.

3.4.     Plaintiff Ocean Beauty and Defendant Pacific Seafood are both national producers and distributors of fresh and frozen seafood products.  As part of their respective businesses, Ocean Beauty and Pacific Seafood purchase and distribute certain seafood products from other

COMPLAINT - 3
Case No. 14-1072

**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington  98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

producers, such as salmon, halibut, a wide variety of other fish species, and crab to be sold to customers for later sale to the public.  Both companies also sell a variety of seafood products such as smoked salmon and frozen seafood under their own private labels.

3.5.     Coulston has many years of significant and substantial experience in the seafood sales industry.

3.6.     By January of 2011, when he began work at Pacific Seafood, Coulston had worked for over two (2) decades in the seafood sales industry.  At that point, his experience included, without limitation, selling fresh and frozen seafood and managing personnel for about ten (10) years for Food Services of America.  Coulston had also subsequently worked as Vice President of Sales at US Foods, Inc. ("US Foods") in the Fife, Washington office, for more than ten (10) years where he oversaw the development of a new fresh seafood program which included a complete line of fresh fish and shellfish offerings and generated about $2 million in sales in its first year.

3.7.     In or about December, 2010 while he was employed at US Foods and as a result of Coulston's significant prior seafood industry experience, Pacific Seafood contacted Coulston and verbally offered him a position as Food Services Manager.

3.8.     In making the offer, Pacific Seafood did not indicate to Coulston that the company intended to require Coulston to agree to a non-competition provision or any other restrictive covenant as a condition of his employment with Pacific Seafood.

3.9.     In December 2010, Coulston verbally accepted a position of at-will employment at Pacific Seafood as a Food Services Manager beginning January 17, 2011.

3.10.    Shortly after accepting the Pacific Seafoods offer of employment, Coulston notified US Foods that he intended to voluntarily terminate his employment with US Foods.  In response, US Foods advised him that his employment was immediately terminated.

3.11.    Following his last day of employment at US Foods, Coulston took some time off prior to starting his new job at Pacific Seafoods on January 17, 2011.

COMPLAINT - 4
Case No. 14-1072

**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington  98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

3.12. Subsequently, on January 14, 2011, Coulston received from Pacific Seafood a "New Hire" packet which instructed him to sign a form Employment Agreement (the "Employment Agreement"), a true and correct copy of which is attached hereto as **Exhibit A** and incorporated by reference as if fully set forth herein.

3.13. Coulston was surprised to learn that the enclosed Employment Agreement contained a restrictive covenant (the "Non-Compete Covenant") which provides as follows:

> **7.    Restrictive Covenants/Non-competition.** Employee agrees that during the term of Employee's employment with the Company and for twelve (12) months after the termination of Employee's employment with the Company Employee's employment, Employee will not directly or indirectly engage in any business (including but not limited to any business that involves seafood distribution, or any so-called "broadline" or "broadliner" distribution business) which in any manner, (including directly or indirectly or wholly partially) competes, or prepares to compete, with the Company in any geographic area in which the Company does business, or become a director, officer, partner, limited partner, employee, agent, representative, stockholder, creditor or consultant to or for any such business.  Specifically and without limiting the foregoing:
>
> (a)    You will not, directly or indirectly, within the Territory described in the Information Section and within a two hundred and fifty-mile (250) mile radius of any of our offices for which you performed services during the term of this Agreement, enter into or engage generally in competition with us whether as an individual on your own or as a partner or joint venturer with someone else, or as an employee or agent for some other person, firm or corporation, or as an officer, director or shareholder of a corporation;
>
> (b)    You will not, on your own or in connection with anyone else, solicit, interfere with or attempt to entice away from us any person who is currently an employee of ours;
>
> (c)    You will not, on your own or in connection with anyone else, solicit, interfere with or attempt to entice away from us any person, form or corporation which is at the time or was, at any time during the term of this Agreement, a customer of ours

3.14. Because Pacific Seafood has many distribution and sales offices in seven western states, the effect of the 250 mile radius limitation would be to effectively prevent Coulston from working in the seafood industry in any city in the western United States.

3.15. Paragraph 11 of the Employment Agreement provides that it shall be construed and interpreted in accordance with the laws of the State of Oregon.

COMPLAINT - 5
Case No. 14-1072

PETERSON RUSSELL KELLY PLLC
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington  98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

3.16. The Employment Agreement also provides that its "Effective Date" is January 25, 2011 (the "Effective Date"); *i.e.*, less than 14 days after Coulston received and signed the Employment Agreement. *See* Exhibit A, §1, ¶D.

3.17. Since Coulston had already resigned his employment at US Foods because he had accepted the employment offer from Pacific Seafood, and he had not received any employment offers other than from Pacific Seafood, as a practical matter he had no choice but to sign the proposed Employment Agreement containing the Non-Compete Covenant.

3.18. Thus, on January 14, 2011, Coulston formalized his acceptance of the Food Services Manager position by signing the form Employment Agreement (*i.e.*, Exhibit A).

3.19. On January 14, 2011, Joe O'Halloran of Pacific Seafood advised Coulston that he could not start his new job for 14 days following January 17, 2011 because Oregon law required a 14 day waiting period between the execution of the Employment Agreement (because it contained the Non-Compete Covenant) and the first day of work.

3.20. When Coulston expressed concern about having resigned his prior job in reliance on the offer from Pacific Seafood and now being presented with the surprise Non-Compete Covenant and the unanticipated two additional weeks without work (or pay), Mr. O'Halloran reassured Coulston that he would be on the company payroll beginning Monday, January 17, 2011 (*i.e.*, Coulston's start date) and would receive two (2) additional weeks of paid time off before reporting to work on Monday, January 31, 2011.

3.21. In or about February of 2011, Pacific Seafood paid Coulston for the period from January 17 through 31, 2011, as well as a $35,000 signing bonus.

3.22. On or about June 12, 2014, Ocean Beauty offered Coulston a position as Sales Director of Food Service. In this position Coulston would be responsible for managing national food service accounts. He would not be calling on or contacting the same customers he did in his Pacific Seafood job, but would be working in a completely different market segment. In the offer letter Ocean Beauty and Coulston specifically agreed that he was prohibited from

COMPLAINT - 6
Case No. 14-1072

**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington 98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

disclosing "any confidential, proprietary or trade secret information of a current or prior employer"  A true and correct copy of the offer letter is attached as **Exhibit B** (the "Ocean Beauty Offer Letter") and incorporated by reference as if fully set forth herein.

3.23. In part, page two (2) of the Ocean Beauty Offer Letter provides as follows:

> You are being offered employment at Ocean Beauty based upon your personal skills and experience, and not due to your knowledge of any confidential, proprietary or trade secret information of a current or prior employer. Should you accept this offer we do not want you to make use of or disclose any such information or to retain or disclose any materials from a prior or current employer.
>
> You and Ocean Beauty agree that during the first twelve (12) months from your last date of employment with your prior employer, you will not participate, directly or indirectly, in solicitation, sales, marketing or business development with or to any customers or strategic partners of your former employer which whom, to the best of your memory, you have had material direct contact or regarding whom you have reviewed confidential information of your former employer. In addition during the first twelve (12) months from your last date of employment with your prior employer, you and Ocean Beauty also agree that you will not be directly or indirectly be involved in the hire of any current employee of your prior employer.

3.24. On July 2, 2014, in conjunction with accepting the employment offer from Ocean Beauty, Coulston advised Pacific Seafood that he was voluntarily resigning his position at Pacific Seafood and gave his two (2) weeks' notice of resignation.

3.25. In response, Pacific Seafood advised him that July 3, 2014 would be his last day of employment.

3.26. On July 7, 2014, Coulston accepted Ocean Beauty's offer of employment by signing the Ocean Beauty Offer Letter.

3.27. As a result of his employment with Pacific Seafood, Coulston did not have access to information that derived actual or potential economic value from not being generally known to the public.  Nor did Coulston have access to information that was the subject of efforts that are reasonable under the circumstances to maintain its secrecy, and/or competitively sensitive confidential business or professional information that otherwise would not qualify as a trade

COMPLAINT - 7
Case No. 14-1072

**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington  98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

secret, including product development plans, product launch plans, marketing strategy or sales plans.

3.28.   Rather, as a result of his employment with Pacific Seafood, Coulston had access to and utilized commonly known industry pricing and sales models based on the seafood market and industry-wide standards and practices.

3.29.   Ocean Beauty and Pacific Seafood are competitors who regularly compete for the same employees and customers.  Both parties sell the same product to its customers – seafood.  Each party's customers are well known to the other, and the individual contacts at each customer are similarly well known to each party.  Over the years, each party has hired employees from the other and each party has solicited business from the other's customers.  In fact, Pacific Seafood's current Chief Operating Officer is the former president and CEO of Ocean Beauty.

3.30.   On July 9, 2014, Pacific Seafood alleged that the Employment Agreement precludes Coulston from working for Ocean Beauty "for a year following his departure from Pacific Seafood," and doing so would violate the Non-Compete Covenant.  A true and correct copy of a letter in this regard is attached hereto as **Exhibit C** and incorporated by reference as if fully set forth herein.

3.31.   On July 11, 2014, Pacific Seafood threatened to file suit and seek damages against the Plaintiffs unless Coulston agrees not to work for Ocean Beauty for a period of twelve (12) months.  A true and correct copy of an e-mail in this regard is attached hereto as **Exhibit D** and incorporated by reference as if fully set forth herein.

3.32.   Defendant Pacific Seafood's allegations and threat of litigation are hampering Plaintiff Ocean Beauty's ability to pursue and expands its business.

3.33.   Defendant Pacific Seafood's allegations and threat of litigation are interfering with Coulston's right and ability to carry out the duties and responsibilities of his employment with Ocean Beauty and otherwise earn a living in the industry in which he has spent most of his adult life.

COMPLAINT - 8
Case No. 14-1072

**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington  98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

## IV.   FIRST CAUSE OF ACTION – DECLARATORY RELIEF

4.1.   Plaintiffs reallege and incorporate by reference, as if fully set forth herein, each and every allegation in the preceding paragraphs.

4.2.   Defendant Pacific Seafood alleges that Plaintiffs are in violation of and have breached the Non-Compete Covenant.

4.3.   Pursuant to Paragraph 11 of the Employment Agreement, the Non-Compete Covenant and other terms and conditions of the Employment Agreement are governed by the law of the State of Oregon.

**The Non-Compete Covenant is Void And The Employment Agreement Without Legal Effect Because the "Employer" Identified In The Agreement Does Not Exist.**

4.4.   Pacific Seafood Group, Inc., the employer identified in the Employment Agreement which is the subject of this action, does not exist as an entity or a registered trade name in Oregon or Washington.

4.5.   Accordingly, the Non-Compete Covenant is void and the Employment Agreement without legal effect because the "employer" identified in the Employment Agreement does not exist.

**The Non-Compete Covenant Is A "Non-competition Agreement" Under Oregon Law.**

4.6.   Under Oregon law, an agreement restraining an employee from directly or indirectly soliciting business from former clients or prospective clients should be construed as a "non-competition agreement".  See, e.g., *Moreland v. World Commc'n Ctr., Inc.,* No. Civ. 09–913–AC, 2010 WL 4237302, at *3–4 (D.Or. Sept. 17, 2010) (holding that an agreement restricting an employee from directly or indirectly soliciting clients or otherwise causing the employer to lose clients was a non-competition agreement even though it was intended as a non-solicitation agreement); *Dymock v. Norwest Safety Protective Equip. for Or. Indus.,* 19 P.3d 934, 937 (Or.Ct.App.2001), *overruled on other grounds,* 45 P.3d 114 (Or.2002) (holding that non-

COMPLAINT - 9
Case No. 14-1072

PETERSON RUSSELL KELLY PLLC
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington  98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

competition agreements include covenants that materially deter or impair an employee from engaging in the same business as the employer); *First Allmerica Fin. Life Ins. Co. v. Sumner,* 212 F.Supp.2d 1235, 1239 (D.Or.2002) (holding that a contractual provision restraining an employee's ability to solicit former customers and co-workers amounts to a non-competition agreement); *Naegeli Reporting Corp. v. Petersen*, 3:11-1138-HA, 2011 WL 11785484 (D. Or. Dec. 5, 2011).

4.7.    As set forth above, the Non-Compete Covenant provides that Coulston "will not directly or indirectly engage in any business…which in any manner, (including directly or indirectly or wholly partially) competes, or prepares to compete, with the Company in any geographic area in which the Company does business, or become a director…employee…or consultant to or for any such business."

4.8.    Thus, under Oregon law, the Non-Compete Covenant is a "non-competition agreement". *See*, *e.g.*, *Moreland v. World Commc'n Ctr., Inc.,* No. Civ. 09–913–AC, 2010 WL 4237302, at *3–4 (D.Or. Sept. 17, 2010; *Dymock v. Norwest Safety Protective Equip. for Or. Indus.,* 19 P.3d 934, 937 (Or.Ct.App.2001); *First Allmerica Fin. Life Ins. Co. v. Sumner,* 212 F.Supp.2d 1235, 1239 (D.Or.2002); *Naegeli Reporting Corp. v. Petersen*, 3:11-1138-HA, 2011 WL 11785484 (D. Or. Dec. 5, 2011).

**<u>Pacific Seafood Failed To Provide Two (2) Weeks' Advance Written Notice of the Non-Compete Covenant As Required To Enforce It Under ORS 653.295(1)(a).</u>**

4.9.    Coulston's employment with Pacific Seafood began on January 17, 2011 (*i.e.*, the date on which Pacific Seafood began to pay him), less than the 14 days after Coulston signed the Employment Agreement, on January 14, 2011.

4.10.    Thus, under Oregon law, the Non-Compete Covenant contained in the Employment Agreement is an invalid and unenforceable non-competition agreement because Pacific Seafood failed to provide Coulston the requisite two (2) weeks' advance written notice

COMPLAINT - 10
Case No. 14-1072

**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington  98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

of the Non-Compete Covenant and it was not entered into upon a "subsequent bona fide advancement" as required under ORS 653.295(1)(a)(A), (B).

### Pacific Seafood Cannot Establish That It Has A "Protectable Interest" As Required Under Oregon Law To Enforce The Non-Compete Covenant.

4.11. Oregon Revised Statute 653.295 provides as follows:

(1) A non-competition agreement entered into between an employer and employee is voidable and may not be enforced by a court of this state unless:

* * *

(c) The employer has a protectable interest. As used in this paragraph, an employer has a protectable interest when the employee:

(A) Has access to trade secrets, as that term is defined in ORS 646.461;

(B) Has access to competitively sensitive confidential business or professional information that otherwise would not qualify as a trade secret, including product development plans, product launch plans, marketing strategy or sales plans; or

*See* ORS § 653.295(1)(c)(A), (B).

4.12. The Non-Compete Covenant is an invalid and unenforceable non-competition agreement under Oregon law because Pacific Seafood cannot establish a "protectable interest" under ORS 653.295(1)(c).

4.13. As a result of his employment with Pacific Seafood, Coulston did not have access to information that derived actual or potential economic value from not being generally known to the public. Nor did Coulston have access to information that was the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

4.14. Rather, as a result of his employment with Pacific Seafood, Coulston had access to and utilized commonly known industry pricing and sales models based on the seafood market and industry-wide standards and practices.

4.15. Accordingly, Coulston did not have access to "trade secret" information as a result of his employment with Pacific Seafood. *See* ORS 646.461(4)(a)-(b).

COMPLAINT - 11
Case No. 14-1072

**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington 98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

4.16. Likewise, as a result of his employment with Pacific Seafood, Coulston did not have "access to competitively sensitive confidential business or professional information that otherwise would not qualify as a trade secret" and thus, cannot establish a "protectable interest" based on ORS § 653.295(1)(c)(B).

4.17. Pacific Seafood cannot otherwise establish a protectable interest because, as a result of Coulston's employment with Pacific Seafood, Coulston did not obtain knowledge of confidential information such that there would be a "substantial risk" that Coulston would be able to divert all or part of the employer's business given his knowledge. *Nike, Inc. v. McCarthy*, 379 F.3d 576, 586-87 (9th Cir. 2004).

4.18. Therefore, Pacific Seafood cannot establish a "protectable interest" and the Court should void the Non-Compete Covenant. *See* ORS § 653.295(1)(c)(A), (B); *see also Konecranes, Inc. v. Scott Sinclair*, 340 F.Supp.2d 1126, 1131 (D. Or. 2004).

### Alternatively, The Non-Compete Covenant Is An Improper Restraint Of Trade That Is Invalid And Unenforceable.

4.19. Alternatively, the Non-Compete Covenant is a covenant in restraint of trade. *North Pac. Lumber Co. v. Moore*, 275 Or. 359, 364, 551 P.2d 431 (1976). In that scenario, to be valid, the Non-Compete Covenant must satisfy each of the following requirements: "(1) it must be partial or restricted in its operation in respect either to time or place; (2) it must be on some good consideration; and (3) **it must be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large in its operation as to interfere with the interests of the public.**" *Id.* (emphasis added); *see also Nike, Inc. v. McCarthy*, 379 F.3d 576, 584 (9th Cir. 2004); *Naegeli Reporting Corp. v. Petersen*, 3:11-1138-HA, 2011 WL 11785484 (D. Or. Dec. 5, 2011).

4.20. The Noncompete Agreement contains language that would preclude Coulston from engaging in conduct that even indirectly diverts former or prospective customers from plaintiff. It does not merely restrict Coulston from soliciting clients with which he had actual

COMPLAINT - 12
Case No. 14-1072

**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington 98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004

contacts while employed by plaintiff. Rather, the Noncompete Agreement purports to restrict Coulston from competing at all against Pacific Seafood.

4.21. Accordingly, the Noncompete Agreement is an unreasonable restraint on trade. *Konecranes, Inc. v. Sinclair*, 340 F.Supp.2d 1126, 1131 (D.Or.2004) ("In deciding whether a non-compete agreement is reasonable, an important consideration is whether it merely restricts the former employee from luring away specific accounts (i.e., those he serviced while employed) or whether it restricts the employee from competing at all.").

4.22. As an unreasonable restraint on trade, the Noncompete Agreement and is invalid and unenforceable. *Konecranes, Inc. v. Scott Sinclair*, 340 F.Supp.2d 1126, 1131 (D. Or. 2004).

**The Plaintiffs Are Entitled To Declaratory Relief.**

4.23. As set forth above, an actual, present and justiciable dispute exists between the parties as to the enforceability of the Non-Compete Covenant.

4.24. Pursuant to 28 U.S.C. § 2201 et seq., this Court should issue a declaratory judgment that this case may properly proceed in this Court, that Oregon law governs the enforceability of the Non-Compete Covenant, and that the Non-Compete Covenant is invalid and unenforceable under Oregon law.

## V.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request for the following relief:

5.1. For a declaratory judgment that this case may properly proceed in this Court, that Oregon law governs the enforceability of the Non-Compete Covenant, and that the Non-Compete Covenant is invalid and unenforceable against Plaintiffs.

5.2. For attorneys' fees and costs as may be allowed by law; and

5.3. Such other and further relief as the court deems just and equitable.

COMPLAINT - 13

Case No. 14-1072

104400 236 eg142005rj.004

**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington  98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

DATED THIS 14th day of July, 2014.

                PETERSON RUSSELL KELLY PLLC

By    /s/ Joshua D. Brittingham
         Joshua D. Brittingham, WSBA # 42061

By    /s/ Marcia P. Ellsworth
         Marcia P. Ellsworth, WSBA # 14334

By    /s/ David C. Kelly
         David Kelly, WSBA # 13534

Peterson Russell Kelly PLLC
10900 NE 4th Street, Suite 1850
Bellevue, WA 98004-8341
Telephone:  (425) 462-4700
jbrittingham@prklaw.com
mellsworth@prklaw.com
dkelly@prklaw.com
Attorneys for Plaintiffs Ocean Beauty Seafoods LLC and Michael Coulston

COMPLAINT - 14
Case No. 14-1072

**PETERSON RUSSELL KELLY PLLC**
1850 Skyline Tower - 10900 N. E. Fourth Street
Bellevue, Washington  98004-8341
Telephone (425) 462-4700  FAX (425) 451-0714

104400 236 eg142005rj.004