1

The Honorable Ricardo S. Martinez

2

3

4

5

6

7

8        UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
9               AT SEATTLE

10   OCEAN BEAUTY SEAFOODS LLC, an
     Alaska limited liability company, and          Case No. 2:14-cv-01072
11   MICHAEL COULSTON, an individual,
                                                    PACIFIC SEAFOOD'S RENEWED
12                    Plaintiffs,                   MOTION FOR PRELIMINARY
                                                    INJUNCTION BASED ON NINTH
13         v.                                       CIRCUIT MANDATE

14   PACIFIC SEAFOOD GROUP
     ACQUISITION COMPANY INC., d/b/a                NOTE ON MOTION CALENDAR:
15   Pacific Seafood Group and Pacific Seafood      JUNE 26, 2015
     Group, Inc., an Oregon corporation, and
16   DULCICH, INC., d/b/a, Pacific Seafood          EXPEDITED CONSIDERATION
     Group, Inc.                                    REQUESTED
17
                      Defendants.
18

19                            I.  RELIEF REQUESTED

20         Pacific Seafood Group Acquisition Company and Dulcich, Inc. (collectively

21   "Pacific Seafood") renew their motion for preliminary injunction as directed by the United States

22   Court of Appeals for the Ninth Circuit in its opinion dated May 8, 2015.  *See Ocean Beauty*

23   *Seafoods, LLC v. Pacific Seafood Group Acquisition Co., Inc.*, No. 14-35950, at 5 (9th Cir.

24   May 8, 2015) ("Because the district court relied on clearly erroneous findings of fact and failed

25   to consider the documents in the motion to supplement the record, the matter must be remanded

26   to the district court for reconsideration of the preliminary injunction motion.").

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1    Pacific Seafood seeks expedited consideration of its motion for reconsideration

2  because the one-year noncompete agreement signed by its former manager, Michael Coulston, is

3  set to expire July 2, 2015.  Although the Ninth Circuit directed this court to "consider whether

4  the noncompete term may be equitably extended under Oregon law," *id*. at 5 n.1, Ocean Beauty

5  Seafoods, LLC ("Ocean Beauty") and Coulston have taken the position that the request for

6  injunctive relief will become moot by July 2, 2015, thereby allowing them to flout the

7  noncompete agreement while leaving Pacific Seafood without an effective remedy.  Such an

8  outcome would not only create a manifest injustice but would essentially render the Ninth

9  Circuit's decision meaningless.  Consequently, the court should direct Ocean Beauty and

10  Coulston to respond to the motion within 7 days, and the court should issue a decision without

11  oral argument promptly thereafter.

12                    **II.  STATEMENT OF FACTS**

13    The underlying facts of this dispute were extensively briefed in connection with

14  Pacific Seafood's motion for a preliminary injunction, Ocean Beauty's response thereto, and

15  Pacific Seafood's reply, as well as in Pacific Seafood's motion for leave to supplement the record.

16  In the interest of brevity, Pacific Seafood will not repeat those facts here.

17    This court entered an order on October 30, 2014, denying Pacific Seafood's

18  motion for a preliminary injunction and its motion to supplement the record.  Pacific Seafood

19  appealed from the denial of the motion for a preliminary injunction on November 6, 2014.  In

20  connection with its appeal, Pacific Seafood also asked the Ninth Circuit to review this court's

21  denial of Pacific Seafood's motion to supplement the record.  The parties argued the case before

22  the Ninth Circuit on May 5, 2015.

23    The Ninth Circuit issued a memorandum opinion on May 8, 2015, that vacated

24  and remanded this court's order denying Pacific Seafood's motion for a preliminary injunction.

25  In reaching this outcome, the Ninth Circuit determined that this court had made a series of

26  factual and legal errors in concluding that Pacific Seafood was not likely to succeed in enforcing

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 2
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1    Coulston's noncompete agreement and in finding that Pacific Seafood did not establish a

2    likelihood of irreparable harm.  Specifically, the Court identified the following errors:

3         1.    "[T]he district court noted that Coulston worked 'primarily [in] the

4    Clackamas County area of Oregon State, and potentially the Puget Sound area of Washington.'

5    However, record evidence shows that Coulston actually worked in Pacific Seafood's 'Clackamas

6    Region,' which includes 'Oregon, southwest Washington, northern California, and Boise, Idaho.'

7    As such, the district court misapprehended the scope of the area in which Coulston worked in

8    finding that the Non-Compete clause was likely unenforceable due to geographic overbreadth."

9    *Ocean Beauty Seafoods*, Opinion at 3.

10        2.    "Even if the Non-Compete Clause covered an overly broad territory, that

11   does not automatically render it unenforceable under Oregon law."  *Id.* (citing *Lavey v. Edwards*,

12   505 P.2d 342, 344 (Or. 1973)).

13        3.    "The district court next found that Pacific Seafood had failed to show a

14   'legitimate interest' that would satisfy Oregon's common law requirements for restraints on trade,

15   *Nike, Inc. v. McCarthy*, 379 F.3d 576, 584 (9th Cir. 2004).  This finding was inconsistent with its

16   earlier conclusion that Pacific Seafood had a 'protectable interest' under Oregon's statutory

17   criteria for noncompetition agreements in information Coulston had about its 'marketing plans

18   and product allocation.'"  *Ocean Beauty Seafoods*, Opinion at 3.

19        4.    "The district court also made a factual error in distinguishing *McCarthy* on

20   the ground that the instant case involves only commodities and not branded products, as there is

21   evidence that the parties sell branded products."   *Ocean Beauty Seafoods*, Opinion at 3-4.

22        5.    "The record belies [the district court's] finding" that the noncompete

23   agreement "was likely unenforceable because of 'drafting problems.'"  *Id.* at 4.

24        6.    "The district court also made a legal error when it held that Pacific

25   Seafood failed to establish a likelihood of irreparable harm because it did not show evidence of

26   actual harm."  *Id.*

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 3
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1        The Ninth Circuit also concluded that this court abused its discretion in denying

2  Pacific Seafood's motion to supplement the record.  In connection with that ruling, the Ninth

3  Circuit pointed out that "some of the excluded documents—particularly Coulston's resume and

4  [Ocean Beauty's] 'National Sales Manager' job description—were highly relevant to the issues

5  the district court weighed in denying the preliminary injunction."  *Id*. at 5.

6        Based on these errors, the Ninth Circuit remanded the matter "to the district court

7  for reconsideration of the preliminary injunction motion."  *Id*.  In remanding the matter, the

8  Ninth Circuit stated that if the district court "grants preliminary injunctive relief, it should

9  consider whether the noncompete term may be equitably extended under Oregon law."  *Id*. at 5

10  n.1.  The Court further stressed "a covenant not to compete is not satisfied by a mere promise to

11  refrain from soliciting a former employer's customers and disclosing confidential information."

12  *Id*. at 5.

### III.  STATEMENT OF ISSUES

14      1.    Based on the Ninth Circuit's memorandum opinion and the evidence in the

15  record, should the court enjoin Coulston from working for Ocean Beauty in the Clackamas

16  Region and within a 100-mile radius of Mukilteo, Washington during the remaining term of his

17  noncompete agreement?

18      2.    Given that Coulston has violated his noncompete agreement by working at

19  Ocean Beauty for nearly one year, should the court equitably extend Coulston's non-compete

20  agreement under Oregon law?

### IV.  EVIDENCE RELIED UPON

22        This motion is based on Pacific Seafood's Answer and Counterclaims, the

23  Declarations of Joseph O'Halloran, Brandie Hogg, Drew Jacobs, and James Phillips, and the

24  exhibits attached thereto, and the records and files herein.

25

26

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 4
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1

## V.  DISCUSSION

2  **A.    Pacific Seafood is Entitled to a Preliminary Injunction Prohibiting Coulston From
Working for Ocean Beauty in the Clackamas Region and Mukilteo, Washington**

3  **Area.**

4              Based on the Ninth Circuit's decision in this case, Pacific Seafood is entitled to a

5  preliminary injunction prohibiting Coulston from working for Ocean Beauty in contravention of

6  his noncompete agreement.  To be entitled to a preliminary injunction, Pacific Seafood must

7  show that it "is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the

8  absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction

9  is in the public interest.'"  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

10  2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Pacific

11  Seafood has established each of the factors required for injunctive relief.

12         1.    Pacific Seafood will likely succeed on its claim for violation of the noncompete
agreement.

13

14              To establish that it is likely to prevail on its claim for violation of the noncompete

15  agreement, Pacific Seafood must show that the noncompete is enforceable under Oregon

16  common and statutory law, and that Coulston has violated the terms of the noncompete

17  agreement.  Pacific Seafood has met both elements.

18              It is beyond question that Coulston violated the express terms of his noncompete

19  agreement by working for Ocean Beauty.  Indeed, in this court and on appeal, neither Coulston

20  nor Ocean Beauty offered any serious argument that Coulston was abiding by his agreement.

21  Although Ocean Beauty suggested that Coulston was somehow in compliance with his

22  noncompete agreement because he asserted that he would not solicit Pacific Seafood's customers,

23  the Ninth Circuit expressly rejected that argument.  *See Ocean Beauty Seafoods* at 5 ("Notably, a

24  covenant not to compete is not satisfied by a mere promise to refrain from soliciting a former

25  employer's customers and disclosing confidential information.").

26

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1    Thus, the only issue on the likelihood of success prong is whether the noncompete

2  agreement is enforceable under Oregon common law and ORS 653.295.  And on that issue, the

3  Ninth Circuit's opinion removed any questions regarding the enforceability of the agreement.  On

4  appeal, Pacific Seafood identified three principal errors that lie at the heart of this court's

5  conclusion that the noncompete is not enforceable:

6         First, although the court found that Pacific Seafood had established that it had a
        "protectable interest" under ORS 653.295(1)(c) in that Coulston "is likely to have
7       acquired information pertaining especially to its business during the course of his
        employment with Pacific Seafood" (ER 6-7), the court inconsistently and
8       inexplicably concluded that Pacific Seafood had failed to show that it had a
        legitimate interest entitled to protection.  Second, the court erroneously concluded
9       that the geographic scope of the non-compete agreement is unreasonably broad
        based on the mistaken assumption that Coulston worked primarily in Clackamas
10      County, Oregon, rather than in the "Clackamas Region," which encompassed
        parts of four states, including Washington.  Third, even if the non-compete
11      agreement were overbroad, the court failed to properly apply Oregon law, which
        requires the court to narrow the geographic scope of the agreement rather than
12      invalidate it entirely.  Appellants' Reply Brief on Appeal at 2-3.

13         As detailed in its memorandum opinion, the Ninth Circuit agreed with each of

14  these arguments.  The Court faulted this court's finding that Pacific Seafood had not shown that it

15  had a "legitimate interest" that was entitled to protection because it was inconsistent with the

16  court's earlier conclusion that Pacific Seafood has a "protectable interest" under ORS 653.295(c),

17  and because the evidence shows that Pacific Seafood and Ocean Beauty sell branded products.

18         With respect to the geographic scope of the noncompete agreement, the Ninth

19  Circuit concluded that this court "misapprehended the scope of the area in which Coulston

20  worked" by stating that Coulston had worked only in Clackamas County, Oregon and the Puget

21  Sound region.  In fact, Coulston himself admitted that the Clackamas Region in which he worked

22  encompasses "Oregon, southwest Washington, northern California, and Boise, Idaho."

23  Declaration of Michael Coulston ¶ 13.  Because Coulston actually worked in a region that

24  encompassed parts of four states as well as in the Puget Sound area, the geographic scope of his

25  noncompete agreement is reasonable.  This is particularly true given that Coulston's resume

26  shows that he obtained and participated in *company-wide* marketing plans.  *See, e.g.*, Resume of

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 6
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1   Michael Coulston ("Have taken key role in Go to Market plan *for the company*") (Declaration of

2   James Phillips, Ex. 4) (emphasis added).  *Cf.* Declaration of Joseph O'Halloran ¶ 10 (Coulston

3   "had access to and was involved in highly confidential . . . nationwide marketing projects and is

4   therefore armed with information regarding those projects' dates, target customers, target

5   markets, and pricing strategies.").

6          Finally, even if the court were to conclude that the geographic scope of the

7   noncompete agreement were overbroad as applied to Coulston, it is obligated to narrow the

8   scope of the agreement under Oregon law.  *See Lavey v. Edwards*, 264 Or. 331, 335, 505 P.2d

9   342 (1973) (under Oregon law, a noncompetition clause "will be interpreted, if possible, so as to

10   make the extent and character of its operation reasonable"); *W. Med. Consultants, Inc. v.*

11   *Johnson*, 80 F.3d 1331, 1335 (9th Cir. 1996) ("We must construe [a] noncompetition clause 'so

12   as to make the extent and character of its operation reasonable.'  A covenant not to compete

13   should be enforced to the extent necessary to protect the interest of the employer.") (quoting

14   *Lavey*, 264 Or. at 335, and citing *Kelite Prods., Inc. v. Brandt*, 206 Or. 636, 651, 294 P.2d 320

15   (1956)).

16          Thus, under *Lavey* and *Johnson*, this court should, at a minimum, rule that the

17   noncompete agreement prohibits Coulston from competing with Pacific Seafood within the areas

18   the Coulston actually worked—the Clackamas Region and a radius of 100 miles from Mukilteo,

19   Washington.  *Compare Actuant Corp. v. Huffman*, No. CV-04-998-HU, 2005 WL 396610, at *12

20   (D. Or. Feb. 18, 2005) (finding a non-compete that restricted an employee from working in

21   Oregon, Washington, California, Idaho, and western Canada—his territory while at the

22   company—to be reasonable in geographic scope because it was "limited to the region in which

23   defendant actually worked").

24          2.   <u>Pacific Seafood will likely suffer irreparable harm.</u>

25          Pacific Seafood also established that it would likely suffer irreparable harm absent

26   injunctive relief.  The Ninth Circuit held that the court's ruling that Pacific Seafood had not

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 7
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1   established irreparable harm was erroneous because it incorrectly stated that Pacific Seafood was

2   required to show actual harm.  *Ocean Beauty Seafoods*, Opinion at 4.  Moreover, as revealed by

3   Pacific Seafood's supplemental evidence—particularly Coulston's resume and Ocean Beauty's

4   "National Sales Manager' job description—Coulston gained access to proprietary information at

5   Pacific Seafood that he could likely use to divert to business from Pacific Seafood in his new

6   position at Ocean Beauty.

7            In the original proceedings before this court, Ocean Beauty and Coulston created

8   the false impression that Pacific Seafood would suffer no real harm from Coulston's departure

9   because he had obtained only general information during his tenure at Pacific Seafood.  For

10  example, Coulston's declaration suggests that he was essentially a low-level fishmonger at

11  Pacific Seafood:

12       I did obtain general information and knowledge about fresh seafood processing
         (cleaning and cutting fish) and how product travels from the fishing boat to the
13       distribution facility to the customer.  However, this information is not proprietary,
         as all seafood companies do the same thing—including Ocean Beauty.  I did not
14       learn anything new about the general concept of food and seafood sales or sales
         management from Pacific Seafood—I had two decades of work for other
15       employers to prepare me for that.

16  Coulston Decl. ¶ 20.

17            In stark contrast, Coulston's resume that he submitted to Ocean Beauty reveals

18  that he played a "key role" in Pacific Seafood's sales and marketing strategy, and that he had

19  access to specific, proprietary information in his capacity as Assistant General Manager at

20  Pacific Seafood:

21       •   Monitor sales activities for sales and GP$ growth and to ensure that
             customers receive satisfactory service and quality goods.
22

23       •   Instruct staff on how to handle difficult and complicated sales.

24       •   Hire, train, and evaluate personnel, promoting or terminating team
             members when appropriate.
25

26       •   *Responsible for Sales and Purchasing including sales growth, inventory,*
             *fill rates, rebates and shelters.*

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 8
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1
- *Have taken key role in the Go to Market plan for the company.  Created a Go to Market game plan on the Pacific Premium line of products.*

2

3
- Work closely with Purchasing and Operations to control Shrink.  Created new policy and procedures to build awareness of the cost of shrinking product.

4

5
Coulston Resume (Phillips Decl., Ex. 4) (emphasis added).

6
        Not only do Coulston's statements undercut Ocean Beauty's assertion that

7
Coulston did not have access to Pacific Seafood's proprietary information, they also corroborate

8
the Declaration of Joseph O'Halloran of Pacific Seafood, which describes Coulston's

9
participation in Pacific Seafood's strategic marketing activities and access to its proprietary

10
information in a manner consistent with Coulston's description in his resume.  *See* Declaration of

11
Joseph O'Halloran ¶¶ 8-13 (Coulston acquired extensive information regarding Pacific Seafood,

12
including its customer contacts, details of new product introduction, pricing and target customers

13
for new products, target markets, pricing strategies, and allocation of products to various

14
customers).

15
        Given the nature of the information that Coulston admittedly acquired at Pacific

16
Seafood, which includes details of new product introduction, pricing and target customers for

17
new products, target markets, pricing strategies, and allocation of products, there is a strong

18
likelihood that Coulston will use that information to Pacific Seafood's detriment at Ocean

19
Beauty.  That risk is especially great because Coulston moved into a position at Ocean Beauty

20
with responsibilities including "maintain[ing] and grow[ing] organic customer base through

21
promotional execution, line item extensions and account penetration," "develop[ing] and

22
assist[ing] 'direct ship' sales from company satellite processing centers," "actively participat[ing]

23
in new product development committee," "develop[ing] recipes and assist[ing] R & D in targeted

24
product research," and "work[ing] in accordance with CEO, Operations & Marketing on

25
marketing and segment definition."  Ocean Beauty National Sales Manager Job Description

26
(Phillips Decl., Ex. 5).

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 9
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1        A competitor such as Ocean Beauty can use Coulston's knowledge to its benefit—

2   and to Pacific Seafood's detriment—by soliciting and marketing to customers while knowing

3   when Pacific Seafood will launch new products and new marketing initiatives, and knowing

4   Pacific Seafood's specialized customer information, such as purchasing tendencies, dates of

5   purchase, and allocation of product.  When the record is considered in its entirety and the correct

6   standard applied, there is a significant likelihood that Pacific Seafood will suffer irreparable

7   harm if the non-compete agreement is not enforced.  Pacific Seafood therefore established that it

8   is entitled to injunctive relief.

9        3.      The balance of equities tips in Pacific Seafood's favor.

10       The Ninth Circuit did not address the third prong of the test for injunctive relief;

11  namely, whether the balance of equities tips in Pacific Seafood's favor.  Nevertheless, the Court's

12  silence cannot be interpreted as a sign that the Ninth Circuit agreed with this court's conclusion

13  that the balance of equities tips in favor of Ocean Beauty.  To the contrary, if the Ninth Circuit

14  had been inclined to agree with this court's conclusion, it presumably would have said so and

15  would not have gone through the trouble of vacating this court's opinion and remanding the

16  matter for reconsideration.  If anything is to be inferred from the Court's silence, it is that the

17  Court did not accept Ocean Beauty's argument that it should affirm this court's order on the

18  ground that the balance of equities tipped in favor of Ocean Beauty.  In any event, Pacific

19  Seafood established that the balance of equities tips in its favor, especially when the

20  supplemental evidence is taken into account.

21       The evidence shows that Pacific Seafood hired and trained Coulston, trusted him

22  with highly sensitive commercial information, paid him a handsome salary, and gave him two

23  promotions in three years.  Because Coulston was privy to Pacific Seafood's confidential and

24  trade-secret information, Pacific Seafood required him to enter into a non-compete agreement,

25  which he signed voluntarily and without objection.  And when Coulston left Pacific Seafood to

26  join Ocean Beauty, Coulston told a fellow employee that he and Ocean Beauty had made a

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 10
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1    calculated decision to disregard the non-compete agreement because they thought they could

2    "beat" it.  Declaration of Drew Jacobs ¶¶ 1-2.

3    Although Coulson denies that he made this statement to Jacobs, the supplemental

4    evidence that is now in the record casts severe doubt on Coulston's credibility.  After all,

5    Coulston swore in his declaration that he had access to only the most rudimentary information at

6    Pacific Seafood such as fish cleaning and transportation from fishing boats to the distribution

7    centers, Coulston Decl. ¶ 20, and that he had "no meaningful exposure to information, customers,

8    product launches, processes, marketing plan, etc. for Pacific Seafood's operations outside of the

9    Clackamas Region, *id*. ¶ 18, but his own resume paints a far different picture.  Among other

10   things, Coulston states that he took a "key role in the Go to Market plan for the company.

11   Created a Go to Market game plan on the Pacific Premium Line of products," was "[r]esponsible

12   for Sales and Purchasing including sales growth, inventory, fill rates, rebates, and shelters," and

13   that he "[m]onitor[ed] sales activities for sales and GP$ growth and to ensure that customers

14   receive satisfactory service and quality goods."  Phillips Decl., Ex. 4.  Coulston's statements in

15   his resume simply cannot be squared with what he told the court in his declaration, and the court

16   should be wary of accepting any of the statements in Coulston's declaration at face value.[1]

17   Although this court attached great importance to the point that Coulston would lose

18   a source of income if the court were to enforce his non-compete agreement, any loss of income is

19   self-inflicted and a product of Coulston's calculated decision not to abide by his promise to Pacific

20   Seafood.  Importantly, even after Coulston had resigned from Pacific Seafood, had informed

21   O'Halloran that he had accepted a position with Ocean Beauty, and had discussed the non-compete

22   agreement with O'Halloran, Pacific Seafood still offered to reinstate Coulston.  Coulston Decl.

23

24   [1] Further, in contrast to Coulston, Jacobs has nothing at stake and nothing to gain by offering his testimony.  Jacobs' version of the events is also consistent with the fact that Coulston approached Ocean Beauty in May 2014 (Phillips Decl., Ex. 3), and that he received an offer on June 11,

25   2014, which was several weeks before he resigned from Pacific Seafood.  Coulston Decl. ¶ 28. It is not plausible that Coulston's noncompete agreement never came to light during the several

26   weeks that Ocean Beauty was recruiting Coulston.

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 11
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

¶ 42.  Despite full knowledge that he would be breaching his non-compete agreement, Coulston rejected Pacific Seafood's offer of reinstatement, and started working for Ocean Beauty one week later, in contravention of his non-compete agreement.

Additionally, it is not even clear that Coulston would lose a source of income if the court enforced his promise not to compete.  Ocean Beauty has operations stretching from Alaska to the Gulf Coast, and Coulston presumably could work in one of the locations outside the territory of his noncompete without any loss of income.  Finally, to the extent that Coulston's and Ocean Beauty's decision to flout the non-compete agreement would cause them any harm, that harm is self-imposed and is a direct consequence of their decision not to honor Coulston's agreement.  As the Oregon Supreme Court stated in *Cascade*, 278 Or. at 754, there is no inequity in holding a party to its contractual promises:

> [D]efendants, with callous indifference to their solemn contractual undertakings, immediately upon the termination of their employment proceeded to sell to regular customers of plaintiff the competitive products of their new employer; customers with whom they had transacted business as plaintiff's salesmen, and whose names, addresses, and requirements appeared upon the lists furnished defendants by plaintiff and added to by themselves.  They seek to avoid the inequity involved in their transactions by a technical claim that the contracts which they signed are void because, as they allege, they are unlimited as to territory and time.  Equity has but little patience with men who deliberately violate their solemn promises and will enforce their obligations if any reasonable basis therefor may be found.

In light of these circumstances, the court should rule that the balance of equities tips in favor of Pacific Seafood.

4.    The public interest weighs in favor of an injunction.

The Ninth Circuit also did not address the question whether the public interest weighs in favor of a preliminary injunction.  Again, although there is not much to be drawn from the Court's silence, it seems unlikely that the Ninth Circuit would have vacated and remanded this court's decision for reconsideration had it agreed that the public interest did not favor an injunction.  This is particularly so because this court simply stated, without discussion, that the public interest does not weigh in favor of granting or denying injunctive relief.

PACIFIC SEAFOOD'S RENEWED MOTION FOR PRELIMINARY INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 12 (Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1    In reaching its decision, this court disregarded Pacific Seafood's argument that

2   under Oregon law, the public is served by preventing a party from disregarding its contractual

3   obligations, particularly a non-compete agreement.  *See, e.g.*, *Pulse Techs., Inc. v. Dodrill*, No.

4   CV-07-65-ST, 2007 WL 789434, at *12 (D. Or. Mar. 14, 2007) (granting a preliminary

5   injunction to enforce a non-compete "will protect the important public interest of enforcing a

6   contract which the parties entered into voluntarily" and "also will restrain the unlawful conduct

7   by [the employee] and preserve the *status quo* that existed before he formed a relationship with

8   [the direct competitor]").

9    The court should also consider the effect of ORS 653.295 in determining whether

10   an injunction is in the public interest.  The public interest in Oregon is best expressed in its

11   legislative enactments.  The Oregon Legislature has determined that noncompete agreements are

12   fully enforceable provided they meet the statutory elements under ORS 653.295.  Because

13   preliminary injunctive relief is necessary to give effect to noncompete agreements, a refusal to

14   award injunctive relief to enforce a lawful noncompete agreement impairs the legislative policy

15   and purpose behind ORS 653.295, and therefore runs counter to the public interest as expressed

16   in the statute.  Given that Coulston's noncompete agreement complies with ORS 653.295,

17   enforcement of the noncompete through a preliminary injunction is in the public interest.

18    Because Pacific Seafood has established all the necessary elements for a

19   preliminary injunction, the court should enter an injunction in the form of the order submitted

20   with this motion.

21   **B.    The Court Should Equitably Extend the Term of Coulston's Noncompete Under
       Oregon Law.**
22

23    Assuming that the court concludes that Pacific Seafood is entitled to preliminary

24   injunctive relief to enforce Coulston's noncompete agreement, the Ninth Circuit has directed the

       court to consider whether the noncompete term can be equitably extended under Oregon law.
25
       Without such an extension, the noncompete will expire on July 2, 2015, and Coulston will have
26

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1    been permitted to compete against Pacific Seafood in derogation of his agreement, while leaving

2    Pacific Seafood little recourse to address Coulston's breach and rendering the Ninth Circuit's

3    opinion largely academic.

4            Although there is little authority on the question whether a noncompete term can

5    be equitably extended under Oregon law, the United States District Court for the District of

6    Oregon concluded that it has discretion to equitably extend the term of a noncompete agreement

7    under Oregon law and offered several persuasive reasons why equitable extensions are

8    warranted.  In an earlier decision, the Oregon Supreme Court entertained a request to use its

9    equity power to enjoin a party from competing after a restrictive covenant expired, although it

10   declined to do so under the particular circumstances of the case.  Additionally, the majority of

11   federal and state courts that have addressed the question whether a court should equitably extend

12   a noncompete agreement that has expired during the pendency of litigation have concluded that

13   such equitable extensions are necessary to give full effect to the noncompete agreement, to

14   prevent a party from wrongfully benefiting from breaching an agreement, and to protect the

15   integrity of the judicial system.

16           In *Actuant Corp. v. Huffman*, No. CV-04-998-HU, 2005 WL 396610, at *19 (D.

17   Or. Feb. 18, 2005), the District of Oregon concluded that it had discretion to issue an injunction

18   that extended the term of a non-compete agreement governed by Oregon law.  In reaching its

19   decision, the court adopted the reasoning of the Iowa Supreme Court in *Presto-X Co. v. Ewing*,

20   442 N.W.2d 85 (Iowa 1989), and quoted extensively from that decision.  In *Presto-X*, the court

21   was confronted with the question whether it should equitably extend a two-year non-compete

22   agreement when the non-compete would have elapsed shortly after the appeal was completed.

23   The *Presto-X* court held that it should equitably extend the period of the non-compete agreement

24   for three reasons:

25           We think it is necessary in such circumstances to use our equitable powers
             to extend the restraint period, so as to accomplish full and complete justice
26           between the parties. . . .

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1                                             . . .

2              First, the integrity of the judicial process must be protected.  Were we not
       to extend the restraint period, defendants in similar cases would be encouraged to
3      inject delay into their litigation with the purpose of using up as much of the
       original restraint period as possible.  Allowing judicial extension of the restraint
4      period will deter delays intended for such a purpose.  We have no evidence that
       Ewing intended any delay here, but, as noted above, the original restraint period
5      in this case will expire shortly after this appeal.  Even if Ewing did not intend any
       undue delay, it would be unfair for him to benefit from the normal delays of the
6      judicial process.

7              Second, for the same reasons, we think a time extension is necessary to
       protect the usefulness of such restrictive covenants.  Ewing's case is a good
8      example of how the effective restraint period of a restrictive covenant can become
       sharply attenuated by delays that are either inherent in the judicial process or
9      intended by the defendant.

10             Third, the extra restraint time is necessary to give Presto-X an opportunity
       to regain the customers it would not have lost had Ewing not violated the
11     covenant. . . .   Presto-X deserves [a fair] interval of time here to get reacquainted
       with the customers it lost to Ewing.  We think one year is sufficient for that
12     purpose.

13     *Actuant*, 2005 WL 396610, at *19-20 (quoting *Presto-X*, 442 N.W.2d at 90).

14             In *Garratt-Callahan Co. v. Yost*, 242 Or. 401, 403 (1966), the Oregon Supreme

15     Court considered a request by plaintiff for "the court to use its equity power, aside from the

16     terms of the contract, to restrain defendant" from competing after the noncompete term expired.

17     Although the court declined plaintiffs' request, it did so because there was no evidence in the

18     record that defendant had engaged in any wrongful conduct.  *See id.* ("We agree with the trial

19     court that plaintiff did not establish its right to injunctive relief.").  Thus *Garratt-Callahan* does

20     not foreclose the court from equitably extending the term of a noncompete when, as in this case,

21     a party has breached its contractual obligations or otherwise.

22             Other courts that have issued injunctions extending the term of a non-compete

23     agreement have observed that an equitable extension is necessary to give full effect to the

24     noncompete agreement and to remedy a breach of a noncompete.  *See, e.g.*, *Rogers v. Runfola &*

25     *Assocs., Inc.*, 565 N.E.2d 540, 544 (Ohio 1991) (because noncompete was necessary to protect

26     defendant's business interests, former employee enjoined from engaging in competing business

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 15
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1    for one-year period beginning 60 days after court's opinion); *Overholt Crop Ins. Serv. Co. v.*

2    *Travis*, 941 F.2d 1361, 1371-72 (8th Cir. 1991) (when employee violated two-year restrictive

3    covenant, thereby interfering with plaintiff's business, the "district court did not err by extending

4    the injunction beyond the life of the restrictive covenant"); *Paws With a Cause, Inc. v. Crumpler*,

5    No. 94-1968, 1996 WL 1796, at *8 (4th Cir. Jan. 3, 1996) (affirming district court's decision to

6    impose three-year injunction running from date of judgment, rather than from initial violation of

7    non-compete agreement); *MWI Veterinary Supply Co. v. Wotton*, 896 F. Supp. 2d 905, 910-11

8    (D. Idaho 2012) (citing cases in which courts extended term of noncompete agreements when

9    defendant had breached the agreement, and extending ban on competition beyond the time

10   agreed by the parties based on a "solid record" of breach of agreement); *Genesis Med. Imaging,*

11   *Inc. v. DeMars*, No. 07-360-KSF, 2008 WL 4180263, at *9 (E.D. Ky. Sept. 5, 2008) ("Because

12   the defendants were acting in violation of the Non-Compete Agreement until issuance of the

13   preliminary injunction, Genesis is entitled to the full two-year term set out in the Non-Compete

14   Agreement in order to allow it an opportunity to regain customers lost by the defendants' actions

15   and to prevent the defendants from benefitting from their breach by shortening the stated term of

16   the Non-Compete Agreement. Therefore, the permanent injunction should run for two years—

17   from February 28, 2008, the date of issuance of the preliminary injunction, until February 27,

18   2010."); *Pro Edge L.P. v. Gue*, 411 F. Supp. 2d 1080, 1092 (N.D. Iowa 2006) ("Equity demands

19   that employees not be rewarded for breaching the terms of a covenant not to compete.  When

20   faced with similar facts, myriad other courts have determined that an extension of the restricted

21   period is mandated by equity.") (citing cases).

22            On the other hand, the courts that have refused a request to extend the term of a

23   noncompete agreement have grounded their decisions in a refusal to rewrite the terms of the

24   parties' agreement, *see, e.g.*, *Vt. Elec. Supply Co. v. Andrus*, 315 A.2d 456 (Vt. 1974) (term of

25   noncompete agreement was a matter of contract between the parties, and the court would not

26   make contracts for them), or have expressed some hostility to noncompete agreements.  *See, e.g.*,

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 16
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1    *MedX, Inc. v. Ranger*, 788 F. Supp. 288, 292 (E.D. La. 1992) ("Because the substantive rules of

2    decision in this case are provided by Florida law, *Donnolo*, *Moraine Supply*, *Lucas*, *Olin Water*,

3    *Michaelson*, and like cases are inapposite in that they reflect bodies of law that, unlike Florida's,

4    are hostile to extended injunctive relief.") (footnote omitted).

5           Neither of these justifications for not extending the term of a noncompete

6    agreement is persuasive.  With respect to the argument that extending a noncompete agreement

7    would require a court to rewrite the parties' agreement, the Virginia Supreme Court explained

8    that the salient question is not whether a court should rewrite an agreement, but whether a court

9    should allow a party to avoid its contractual obligations by breaching the agreement:

10          Curtis argues that prospective enforcement would rewrite the parties' contract,
          creating a protected period upon which they had not agreed.  This misstates the
11          issue.  Curtis was obligated to refrain from competition for a period of three years
          from termination.  The question before the court is whether he is able, by his
12          breach of his agreement, not only to reap the profits of his breach but also to
          render the judicial system impotent to redress it, simply by forcing the other party
13          to go through lengthy litigation to obtain relief.  We answer this in the negative.

14   Roanoke Eng'g Sales Co. v. Rosenbaum, 290 SE2d 882, 886 (Va. 1982).

15          To the extent that the courts have refused to extend the terms of a noncompete

16   agreement based on a hostility to restrictive covenants, the court should accord no weight to that

17   factor.  Coulston's noncompete agreement is governed by Oregon law, which expressly

18   authorizes noncompete agreements that are reasonable in scope.  In enacting ORS 653.295, the

19   Oregon Legislature balanced the competing interests of employers and employees, and it

20   determined that noncompete agreements are fully enforceable if certain conditions are met,

21   including that the employer have a "protectable interest" and that the agreement not exceed two

22   years.  Because Oregon law is not hostile to noncompete agreements and the District of Oregon

23   in *Actuant* has approved the equitable extension of noncompete agreements, the court should

24   extend the term of Coulston's noncompete agreement and enjoin him from competing with

25   Pacific Seafood for a period of one year from the date of the court's order.

26

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 17
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1          In its supplemental brief on appeal, Ocean Beauty argued that the Ninth Circuit

2     should not equitably extend the term of the noncompete because the request for preliminary

3     relief is moot—or nearly moot—under Oregon law.  Ocean Beauty cited *Garratt-Callahan*, 242

4     Or. at 402 (1966), *Professional Bus. Servs. v. Gustafson*, 285 Or. 307, 310 (1979), and *North*

5     *Pac. Lumber Co. v. Oliver*, 286 Or. 639, 644 (1979), for the proposition that "where an

6     injunction against an employee who agreed not to compete is denied, an appeal is rendered moot

7     when a restrictive covenant has expired or substantially expired by its own terms during the

8     pendency of an appeal."  Ocean Beauty Seafoods' and Coulston's Supplemental Brief in

9     Response to Clerk's Order at 9-10.

10         To the extent that Ocean Beauty reprises its argument on remand, the court should

11    deny it for several reasons.  First, the question whether Pacific Seafood's request for injunctive

12    relief is moot is a question of federal, not state, law.  Mootness is a species of justiciability,

13    which, in federal court, is determined under Article III of the United States Constitution, not by

14    state law concepts.  *See, e.g., Deakins v. Monaghan*, 484 U.S. 193, 199 (1988) ("Article III of the

15    Constitution limits federal courts to the adjudication of actual, ongoing controversies between

16    litigants.");  *Spencer v. Kenna,* 523 U.S. 1, 7 (1998) (even if a case arises in state court, "the

17    question of mootness is a federal one which a federal court must resolve before it assumes

18    jurisdiction.");  *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) ("Although as a matter of

19    Washington state law it appears that this case would be saved from mootness by 'the great public

20    interest in the continuing issues raised by this appeal,' the fact remains that under Art. III '(e)ven

21    in cases arising in the state courts, the question of mootness is a federal one which a federal court

22    must resolve before it assumes jurisdiction.") (citations omitted).

23         Second, the Ninth Circuit made clear at oral argument that Pacific Seafood's

24    request for injunctive relief is not moot.  *See Ocean Beauty Seafoods, LLC v. Pacific Seafood*

25    *Group Acquisition Co., Inc.*, No. 14-35950 (9th Cir. 2015) (audio recording of May 5, 2015, oral

26    argument ( http://www.ca9.uscourts.gov/media/view.php?pk_id=0000014315) (1:06 – Presiding

PACIFIC SEAFOOD'S RENWED MOTION FOR PRELIMINARY
INJUNCTION MOTION BASED ON NINTH CIRCUIT MANDATE - 18
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1  Judge Ronald Gould: "Our panel has addressed the mootness issue . . . We don't think the issue

2  is moot.").[2]  The Court noted that many courts have equitably extended the term of a noncompete

3  agreement and later wrote that this court should consider on remand whether Coulston's

4  noncompete agreement should be equitably extended under Oregon law.  Thus, if Ocean Beauty

5  again argues that Pacific Seafood's request is moot, this court should reject the argument as

6  inconsistent with the Ninth Circuit's rulings on appeal.

7          By going to work for Ocean Beauty immediately after he left Pacific Seafood,

8  Coulston breached his noncompete agreement and has deprived Pacific Seafood of the benefits

9  arising from that agreement.  If this court concludes that Pacific Seafood is entitled to injunctive

10  relief to enforce Coulston's noncompete agreement, yet refuses to fashion an equitable remedy

11  that would prevent Coulston from competing for the agreed-upon term, Coulston and Ocean

12  Beauty, through their wrongful conduct, will have reaped the benefits of Coulston's breach and

13  left Pacific Seafood without an effective remedy.  Such an outcome is antithetical to fundamental

14  principles of equity and justice—the court should therefore follow *Actuant* and the majority of

15  federal and state courts, and equitably extend the term of the noncompete agreement in a manner

16  that gives full effect to the parties' promises.

17                              **VI.  CONCLUSION**

18          For the foregoing reasons, this motion should be granted.

19

20

21

22

23

24  _____

[2] The panel made these statements in response to Pacific Seafood's counsel's comment that Ocean
25  Beauty was attempting to set a trap by asking the Court to remand the matter to the district court
    for further proceedings while simultaneously arguing that the case would become moot upon
26  remand.

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1

### VII.   PROPOSED ORDER

2     A proposed form of order is attached.

3     DATED this 3rd day of June, 2015.

4

5                                              */s/ James L. Phillips*
                                               James L. Phillips, WSB No. 13186
6                                              MILLER NASH GRAHAM & DUNN LLP
                                               601 Union Street, Suite 4400
7                                              Seattle, WA  98101
                                               Telephone:  (206) 622-8484
8                                              Fax:  (206) 622-7485
                                               E-mail:  james.phillips@millernash.com
9

10
                                               */s/ Bruce L. Campbell*
11                                             */s/ Andrea M. Barton*
                                               */s/ Naomi Levelle Haslitt*
12                                             Bruce L. Campbell, WSB No. 925377
                                               Andrea M. Barton, Admitted Pro Hac Vice
13                                             Naomi Levelle Haslitt, Admitted Pro Hac Vice
14                                             MILLER NASH GRAHAM & DUNN LLP
                                               111 SW 5TH AVE
15                                             3400 U.S. BANCORP TOWER
                                               PORTLAND, OR 97204
16                                             Telephone:  503-224-5858
                                               Fax: 503-224-0155
17                                             Email:  bruce.campbell@millernash.com
18                                             Email:  andrea.Barton@millernash.com
                                               Email:  naomi.haslitt@millernash.com
19
                                               Attorneys for Defendant and Counter Claimant
20

21

22

23

24

25

26

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1

1    I hereby certify that I served the foregoing PACIFIC SEAFOOD'S RENEWED

2    MOTION FOR A PRELIMINARY INJUNCTION MOTION BASED ON NINTH CIRCUIT

3    MANDATE on all parties of record via CM/ECF system transmission.

4    Under the laws of the state of Washington, the undersigned hereby declares, under

5    the penalty of perjury, that the foregoing statements are true and correct to the best of my

6    knowledge.

7    Executed at Seattle, Washington, this 3rd day of June, 2015.

8

9    */s/ James L. Phillips*
     James L. Phillips

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - 1
(Case No. 2:14-cv-01072)

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

70029680.1