UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| OCEAN BEAUTY SEAFOODS LLC, *et al.*, | ) ) ) | CASE NO. C14-1072RSM |
| Plaintiffs, | ) ) | ORDER DENYING DEFENDANTS' |
| v. | ) ) | MOTION FOR PRELIMINARY INJUNCTION |
| PACIFIC SEAFOOD GROUP ACQUISITION COMPANY INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## I.       INTRODUCTION

This matter comes before the Court on Defendants' Renewed Motion for Preliminary Injunction after remand from the Ninth Circuit Court of Appeals. Dkt. #53. With an apparent lack of respect for this Court and its prior findings, Defendants rejoice in reiterating the numerous "errors" found by the Ninth Circuit Court of Appeals, arguing that this Court <u>must</u> now grant its motion for preliminary injunction. *See* Dkt. #53. Not only does this Court take exception to the tone of Defendants' briefing, it also believes the Ninth Circuit misconstrued this Court's Order in a number of respects, including the characterization of the Court's prior analysis, and the summary of the evidence before this Court at the time this Court denied the initial motion for preliminary injunction. As further discussed below, the Ninth Circuit, while remanding this matter for the reasons stated in its Memorandum, did not mandate that this

ORDER
PAGE - 1

Court grant an injunction against Mr. Coulston.  Further, the evidence before this Court now also does not mandate the same.  Having considered the parties' pleadings and documents in support thereof, and having determined that oral argument is not necessary in this matter, the Court now resolves the motion as follows.

## II.    BACKGROUND

This matter arises from Plaintiff Michael Coulston's former employment with Defendant Pacific Seafood Group Acquisition Company Inc.'s ("Pacific Seafood") and his new employment with Ocean Beauty Seafoods LLC ("Ocean Beauty").  Dkt. #1.  Mr. Coulston was formerly employed in various levels of management with Defendant.  Dkt. #15 at ¶¶ 3-4.  As part of his acceptance of employment with Defendant, he signed an employment contract which contained an agreement that, should he leave employment with Defendant, he would not directly or indirectly engage in business with any competitor company in a certain territory for a period of 12 months.  Dkt. #1 at ¶¶ 3.12-3.13.

On July 2, 2014, Mr. Coulston began working for Plaintiff Ocean Beauty, a direct competitor of Defendant in the territory covered by Mr. Coulston's employment contract.  Dkt. #1 at ¶ ¶ 3.2, 3.3, 3.22, 3.23 and 3.29.  After learning that Mr. Coulston had accepted employment with Ocean Beauty, Defendants sent a letter to Ocean Beauty's lawyer, informing him that Mr. Coulston's employment agreement precluded him from working at Ocean Beauty for one year.  Dkt. #1 at ¶ 3.30 and Exhibit C.  In response, Ocean Beauty filed the instant Declaratory action, seeking an Order declaring that Mr. Coulston's employment contract is unenforceable, and therefore he is not in violation of it by working for Ocean Beauty.  Dkt. #1. Defendants have asserted several Counterclaims against Ocean Beauty and Mr. Coulston, including breach of contract, tortious interference with a business contract, tortious interference

with a business expectancy, and breach of Washington's Uniform Trade Secrets Act ("UTSA"). Dkt. #12 at Counterclaim ¶¶ 4.2-4.31.

After filing their Counterclaims, Defendants sought a preliminary injunction to enjoin Ocean Beauty and Mr. Coulston from using any confidential and/or proprietary information it may have received from Mr. Coulston to date and to enjoin Mr. Coulston from working for Ocean Beauty while the matter proceeds on the merits.  Dkt. #13.  The Court denied the motion, determining that Defendants had failed to demonstrate a likelihood of success on the merits of their Counterclaims and that they had failed to show irreparable harm absent injunctive relief.  Dkt. #40.  Defendants appealed to the Ninth Circuit Court of Appeals.  Dkt. #41.  On May 8, 2015, the Court of Appeals issued an unpublished Memorandum disposition, reversing this Court's denial of the preliminary injunction and remanding for further consideration.  Dkt. #51.  The Mandate issued on June 2, 2015.  Dkt. #54.  The instant motion followed.

### III.      DISCUSSION

#### A.  Preliminary Injunction Standard

In determining whether to grant a preliminary injunction, this Court considers: (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to that party if an injunction is not issued; (3) the extent to which the balance of hardships favors the moving party; and (4) whether the public interest will be advanced by the injunction. *See Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 456 (9th Cir. 1994); *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).  The Ninth Circuit has often compressed this analysis into a single continuum where the required showing of merit varies inversely with the showing of irreparable harm.  *See Prudential Real Estate*

*Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000).  Thus, Pacific Seafood will be entitled to preliminary relief if it is able to show either: (1) probable success on the merits and the possibility of irreparable harm; or (2) the existence of serious questions going to the merits and a fair chance of success thereon, with the balance of hardships tipping sharply in favor of an injunction.  *Miller*, 19 F.3d at 456.

### B.  Relief Now Sought By Defendants

Defendants' renewed motion seeks relief much different than that sought by Defendants through their initial motion for preliminary injunction.  Indeed, it now appears that Defendants ask this Court to re-write portions of the employment contract to narrow the geographic scope of Mr. Coulston's employment with Pacific Seafood.  Dkt. #53 at 4.  Further, Defendants provide no argument with respect to its claims for breach of Washington's UTSA.  Thus, the Ninth Circuit's Memorandum does little to inform the Court's current decision.  For the first time, the Court is also asked to consider whether it should grant an extension of any injunction based on equitable tolling.

### C.  Likelihood of Success on the Merits

The Court first turns to Defendants' likelihood of success on the merits of this matter.  Defendants argue that it is likely to succeed on the merits of its breach of contract counterclaim (and defense to Plaintiffs' allegation that Mr. Coulston's employment agreement is unenforceable) because it has a protectable interest under ORS 653.295(c) based on sales of branded products.  Dkt. #53 at 6.  Defendants further argue that the geographic scope of the non-compete agreement is reasonable, and therefore it is enforceable.  Dkt. #53 at 6-7.  This Court remains unconvinced.

*1. Plaintiff's Alleged Breach and Enforceability of Non-Compete Agreement*

As the Court previously noted, and the parties do not dispute, Defendants' claim for breach of contract based on the non-compete portion of the employment agreement with Mr. Coulston is governed by Oregon law. Dkt. #15, Ex. 1 at ¶¶ 7 and 11. To be enforceable under Oregon law, a covenant not to compete must meet both the requirements of ORS 653.295 and Oregon's common law governing restraints on trade. *See Nike, Inc. v. McCarthy*, 379 F.3d 576, 580-84 (9th Cir. 2004).

This Court previously determined that Defendants could likely meet the elements of ORS 653.295. Dkt. #40 at 4-7. First, the employer must inform the employee in a "written employment offer received by the employee at least two weeks before the first day of the employee's employment that a noncompetition agreement is required as a condition of employment" or "the agreement is entered into upon a subsequent bona fide advancement of the employee by the employer." ORS 653.295(1)(a). Second, the employee must be employed as an exempt administrative, executive, or professional employee. ORS 653.295(1)(b) and ORS 653.020(3). Third, the employee must have access to trade secrets, or competitively sensitive confidential business or professional information. ORS 653.295(1)(c). Fourth, the employee's total annual gross salary and commissions at the time of the employee's termination must exceed the current median family income for a four-person family as determined by the U.S. Census Bureau. ORS 653.295(1)(d).

However, this Court then found that Defendants could not demonstrate a likelihood of success under Oregon common law governing restraints on trade. Dkt. #40 at 7-11. Under Oregon common law, a non-compete agreement is enforceable if it is: 1) partial or restricted in its operation in respect to either time or place; 2) it comes on good consideration, and 3) it must

ORDER
PAGE - 5

be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large as to interfere with the interests of the public. *Volt Servs. Grp., Div. of Volt Mgmt. Corp. v. Adecco Empl't Servs., Inc.*, 178 Or. App. 121, 126, 35 P.3d 329 (2001), *rev. den.*, 333 Or. 567 (2002); *Nike, Inc. v. McCarthy*, 379 F.3d 576, 584 (9th Cir. 2004).   The parties previously disputed, and continue to dispute, whether the agreement is reasonable.  *See* Dkts. #13 at 13-15, #23 at 18-20, #53 at 5-7, and #56 at 10-16.

To satisfy the reasonableness requirement, the employer must show as a predicate "that [it] has a 'legitimate interest' entitled to protection.'"  *McCarthy*, 379 F.3d at 584-85 (quoting *North Pac. Lumber Co. v. Moore*, 275 Ore. 359, 551 P.2d 431, 434 (Or. 1976)).  "That interest need not be in the form of a trade secret or a secret formula; it may consist of nothing more than valuable 'customer contacts.'"  *North Pacific Lumber Co. v. Moore*, 275 Ore. 359, 364, 551 P.2d 431, 434 (1976).  First at issue in Defendants' instant motion is whether the Court erred in determining that Pacific Seafood did not have a legitimate interest entitled to protection.  Dkt. #53 at 6.  The Ninth Circuit believed that this Court committed such legal error.  Pacific Seafood now also argues the same in conclusory manner relying only on the Ninth Circuit's Memorandum, which contained no analysis.  *See* Dkt. #51 at 3.

Unfortunately for Defendants, the Ninth Circuit both misconstrued the Court's prior analysis and ignored Oregon law.  As a point of clarification, this Court did not previously determine that Defendants failed to show a legitimate interest entitled to protection as the Ninth Circuit Court of Appeals states.  *See* Dkt. #51 at 3.  Rather, the Court found the scope of the Agreement unreasonable with respect to Pacific Seafood's protectable interest.  Dkt. #40 at 7-11.  This distinction is important because, as noted above, Oregon common law requires that

any non-compete agreement should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large as to interfere with the interests of the public.

Interestingly, in its renewed motion, Pacific Seafood abandons most of its prior arguments with respect to the protection of its legitimate interests, and focuses primarily on the geographic scope of the Agreement.  Dkt. #53 at 6-7.  The agreement at issue purports to restrict Mr. Coulston in the following manner:

> Employee agrees that during the term of Employee's employment with the Company and for twelve (12) months after the termination of Employee's employment, Employee will not directly or indirectly engage in any business (including but not limited to any business that involved seafood distribution, or any so-called "broadline" or "broadliner" distribution business) which in any manner, (including directly or indirectly or wholly partially) competes, or prepares to compete, with the Company in any geographic area in which the Company does business, or becomes a director, officer, partner, limited partner, employee, agent, representative, stockholder, creditor or consultant to or for any such business.  Specifically and without limiting the foregoing:
>
> (a) You will not, directly or indirectly, within the Territory described in the Information Section and within a two hundred and fifty-mile (250) mile radius of any of our offices for which you performed services during the term of this Agreement, enter into or engage generally in competition with us whether as an individual on your own or as a partner or joint venture with someone else, or as an employee or agent for some other person, firm or corporation, or as an officer, director or shareholder of a corporation;
>
> (b) You will not, on your own or in connection with anyone else, solicit, interfere with or attempt to entice away from us any person who is currently an employee of ours;
>
> (c) You will not, on your own or in connection with anyone else, solicit, interfere with or attempt to entice away from us any person, form or corporation which is at the time or was, at any time during the term of this Agreement, a customer of ours[.]

Dkt. #15, Ex. 1 at ¶ 7.

ORDER
PAGE - 7

This Court previously found that portion of the Agreement to be overbroad.  Dkt. #40. The agreement restricts Mr. Coulston from competing with Pacific Seafood "in any geographic area in which the Company does business" and "[s]pecifically, and without limiting" that limitation, "within a two hundred and fifty-mile (250) mile radius of any of our offices for which you performed services during the term of this Agreement."  Dkt. #15, Ex. 1 at ¶ 7 (emphasis added).  The terms "geographic area" is not defined.  Thus, based on the evidence at this stage in the litigation, it is not unreasonable to interpret that language as effectively limiting Mr. Coulston from competing with Pacific Seafood in any state on the continental West Coast, including Alaska.  The Court has no reason on remand to find otherwise.

Although Defendants continue to maintain that the geographic scope of this Agreement is reasonable, Defendants argue that, even if it is not reasonable, this Court is "obligated" to narrow the scope to "the Clackamas Region and a radius of 100 miles from Mukilteo, Washington."  Dkt. #53 at 7.  The Court disagrees.  As an initial matter, this argument raises an issue not previously raised before this Court and not considered by the Ninth Circuit Court of Appeals.  *See* Dkt. #51.  The Court could deny the motion on that basis.  However, the Court also finds that Defendants misconstrue Oregon's law with respect to narrowly-tailoring non-compete agreements.  In *Lavey v. Edwards*, 264 Or. 331, 505 P.2d 342 (1973), the primary case upon which Defendants rely, the Oregon Supreme Court did not set forth any rule obligating courts to narrow the scope of a non-compete contract in favor of the employer.  Rather, while acknowledging that "a noncompetition clause in an employment contract which includes no express limitation as to time or territory will be interpreted, if possible, so as to make the extent and character of its operation reasonable," the Oregon Supreme Court emphasized that whether a noncompetition clause may constitute a reasonable or an unreasonable restraint of trade

ORDER
PAGE - 8

depends upon the facts and circumstances of the case. *Lavey*, 264 Or. at 335-40 (emphasis added). The court then remanded the matter at issue for a reasonableness determination. In *W. Med. Consultants, Inc. v. Johnson*, 80 F.3d 1331, 1335 (9th Cir. 1996), the Ninth Circuit Court of Appeals reiterated the same reasonableness principles. Further, Defendants have presented no authority mandating that the Court narrow the Agreement as proposed at this stage of the case, before significant discovery has occurred. The Court finds that making such a determination now would be improper. This is particularly true where the evidence on the record before the Court creates issues of fact as to where Mr. Coulston actually worked. And what he learned while in that employment. Accordingly, the Court continues to find the Agreement overbroad as to geographic scope.

Additionally, in deciding whether a non-compete agreement is reasonable, an important consideration is whether it merely restricts the former employee from luring away specific accounts (*i.e.*, those he serviced while employed) or whether it restricts the employee from competing at all. *Konecranes, Inc. v. Sinclair*, 340 F. Supp.2d 1126, 1131 (D. Or. 2004). In the former instance, the employee might gain an unfair advantage, such as goodwill and inside information, derived from his prior contacts with the client. *Id.* Indeed, in *North Pacific Lumber*, the court stated:

> It is clear that if the nature of the employment is such as will bring the employee in personal contact with the patrons or customers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers, enabling him . . . to take advantage of such knowledge of or acquaintance with the patrons or customers of his former employer, and thereby gain an unfair advantage, equity will interfere on behalf of the employer and restrain the breach of a negative covenant not to engage in such competing business . . . .

ORDER
PAGE - 9

551 P.2d at 434 (citation omitted).  Thus, the court recognized that an employee's mere ability to take advantage of the employer's confidential information and thereby gain an unfair advantage may be sufficient for equity to restrain the employee from engaging in a competing business.  *See id.*; *see also Farmers Ins. Exch. v. Fraley*, 80 Ore. App. 117, 720 P.2d 770, 771 (Or. Ct. App. 1986) (concluding that plaintiffs had a protectable interest where the employees "had access to confidential information which could be used to plaintiffs' detriment); *Volt Servs. Group v. Adecco Employment Servs., Inc.*, *supra* (explaining that an employee's knowledge of confidential information is sufficient to justify enforcement of the non-compete if there is a "substantial risk" that the employee will be able to divert all or part of the employer's business given his knowledge).

Significantly, Pacific Seafood appears to have abandoned its argument that it has a protectable interest in Mr. Coulston's knowledge, except within the now-narrowed territory it seeks to enforce the Agreement.  Indeed, Pacific Seafood states:

> It is not even clear that Coulston would lose a source of income if the court enforced his promise not to compete.  Ocean Beauty has operations stretching from Alaska to the Gulf Coast, and Coulston presumably could work in one of the locations outside the territory of his noncompete without any loss of income.

Dkt. #53 at 12.  As a result, the Court cannot find that there is a substantial risk Ocean Beauty would be able to divert a significant part of Pacific Seafood's business given Mr. Coulston's knowledge.

The Court previously found it significant that the parties are involved in a commodity-based business, distinguishing the instant matter from that in *McCarthy*, *supra*, at 586 (finding a non-compete enforceable because the employee had the highest access to confidential information concerning Nike's product allocation, product development and sales strategies,

ORDER
PAGE - 10

which would allow him to divert a substantial part of Nike's footwear sales to Reebok without explicitly disclosing this information to any of Reebok's employees). The Ninth Circuit Court of Appeals found that decision to be in error because "there is evidence that the parties sell branded products." Dkt. #51 at 3-4. Defendants now make the same argument.

The Court rejects Defendants' argument as it misrepresents the evidence before the Court at the time the Court initially considered the motion for summary judgment. Defendants argue at length that this Court, on remand, should consider only what was before the Court on the initial motion for preliminary injunction. Dkt. #60 at 3-8. Yet they then ask the Court to rely on a new Declaration submitted by Mr. Coulston that "now makes clear that both Pacific Seafood and Ocean Beauty compete with branded products and that Coulston has been involved with both." Dkt. #60 at 6. Pacific Seafood cannot have it both ways. If it does not want the Court to consider new evidence introduced by Mr. Coulston, the Court will not do so. To Pacific Seafood's detriment, and despite what the Ninth Circuit believed was in the record before this Court on the initial preliminary injunction, Pacific Seafood did not advance any arguments based on branded products. *See* Dkt. #13. Nor did Pacific Seafood rebut Ocean Beauty's assertions during oral argument that the parties are dealing with:

> a commodity, it is a known product, it is salmon, and crab, and cod, and fish that are pulled from the same ocean. These aren't high tech, proprietary, unknown or unknowable processes or devices, like cloud computing services or like high-end tennis shoes in the Nike case. These are fish pulled from the ocean that get processed and put into commerce by both companies.

Dkt. #45 at 23:3-10. In fact, Pacific Seafood said nothing about that assertion at all. *See* Dkt. #45 at 33:8-36:18.

As a result, the Court finds that Pacific Seafood has provided no evidence suggesting that Mr. Coulston has actually diverted any business to Ocean Beauty based on his knowledge

ORDER
PAGE - 11

of Pacific Seafood's business practices, and, more significantly, has provided no evidence to the Court supporting the contention that he is likely to divert business to Ocean Beauty based on any such knowledge.

Finally, the Court remains unconvinced that Pacific Seafood will be able to demonstrate an enforceable agreement due to the many drafting problems with the non-compete document itself, and with other related documents. This Court recognizes that the Ninth Circuit has found this determination to be in error. Dkt. #51 at 4. However, with all due respect, the Ninth Circuit's conclusion is based on an erroneous reading of the documents in the record. On the initial motion for preliminary injunction, Ocean Beauty pointed to problems in the drafting of Mr. Coulston's job offer letter in January of 2014, which fails to note that his new position was subject to the existing non-compete agreement. *See* Dkt. #15, Ex. 3. While the Ninth Circuit, and now Pacific Seafood, attempts to remedy that problem by referencing the "standard terms and conditions" language contained in the letter, that language provides no assistance. When read in context of the letter, <u>that language clearly references the standard terms and conditions</u> <u>contained in the Team Member Handbook, which does not contain the non-compete agreement</u> <u>at issue in this matter</u>. *Id.*

Accordingly, for all of the reasons above, the Court concludes that Pacific Seafood has not demonstrated a likelihood of success as to the enforceability of its non-compete agreement with Mr. Coulston.

### 2. *Washington's UTSA*

The Court previously found that Defendant has failed to demonstrate a likelihood of success on the merits of its UTSA claim at this stage of the litigation. Defendants fail to brief this claim in its renewed motion, and the Ninth Circuit Court of Appeals also did not address

ORDER
PAGE - 12

the Court's decision on that claim.  Thus, the Court's prior decision that Defendants failed to demonstrate a likelihood of success on the merits of this claim stands.

### D.  Irreparable Harm

Pacific Seafood argues that it is immediately and irreparably harmed if Mr. Coulston is allowed to continue working for Ocean Beauty in violation of the employment agreement. Defendants assert that Mr. Coulston's knowledge of the information discussed above puts Ocean Beauty at a competitive advantage, harming Pacific Seafood.  Dkts. #13 at 17-19 and #53 at 7-10.  The Court previously determined that Pacific Seafood's allegations of harm were conclusory and speculative.  While the Ninth Circuit Court of Appeals concluded that such finding was in error, the Court of Appeals did so, again, under a misinterpretation of the Court's prior analysis.  *See* Dkt. #51 at 4.

The Ninth Circuit found this Court to be in error because it believed this Court based its decision solely on the fact that Pacific Seafood failed to show evidence of actual harm.  *Id.*  It is true that this Court faulted Pacific Seafood for failing to provide any evidence of actual harm, but that was not the sole basis of the Court's prior decision, and it is not now.  In fact, the Court noted that the Ninth Circuit Court of Appeals recently reversed a District Court's grant of a preliminary injunction, finding that the record had not contained sufficient evidence to demonstrate irreparable harm because the allegations were conclusory and speculative. *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 2014 U.S. App. LEXIS 19235 (9th Cir. Oct. 8, 2014).  A party seeking a preliminary injunction must establish that it is "likely to suffer irreparable harm in the absence of preliminary relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).  The mere "possibility of irreparable harm" is insufficient.  *Id.* at 22.  To establish a likelihood of irreparable harm, conclusory or

ORDER
PAGE - 13

speculative allegations are not enough.  *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013); *see also Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (finding irreparable harm was not established by statements that "are conclusory and without sufficient support in facts").

On the record before the Court at this time, the Court continues to find that the allegations of harm in the record are <u>conclusory and speculative</u>.  Pacific Seafood has not provided any evidence of actual harm to its business or that Mr. Coulston has attempted to solicit or actually solicited current customers.  Nor, for the reasons discussed above, has Pacific Seafood demonstrated that Ocean Beauty would be able to divert a significant part of Pacific Seafood's business given Mr. Coulston's knowledge, causing it harm.  Accordingly, Pacific Seafood fails to show that it is likely it will suffer irreparable harm absent injunctive relief.

### E.  Balance of Equities

In balancing the equities, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.  Here, as noted above, Pacific Seafood has failed to demonstrate any evidence of actual harm or that it is likely to be harmed if Mr. Coulston continues to work at Ocean Beauty.  On the other hand, Mr. Coulston is the sole financial earner for his family, and precluding him from working would have severe ramifications not just for him, but also for his spouse. Dkt. #24 at ¶ 63.  Accordingly, the balance of equities tips in favor of Mr. Coulston.

ORDER
PAGE - 14

### F.  Public Interest

The public interest does not weigh heavily in favor of either party. There is no evidence that the court's decision on this injunction will impact the public.

For all of these reasons the Court DENIES Pacific Seafood's request for a preliminary injunction.

### G.  Equitable Tolling

Recognizing the Ninth Circuit's Memorandum and Mandate, and acknowledging that the Court of Appeals may once again disagree with this Court as to whether an injunction against Mr. Coulston should be imposed, this Court alternatively examines Defendants' argument for equitable tolling.  For the reasons set forth herein, this Court would not impose an injunction beyond the expiration of the one-year period of time set forth in Mr. Coulston's employment agreement, and therefore any injunction granted would expire on July 2, 2015.

The Oregon Supreme Court has often declined to equitably toll the term of a restrictive covenant where the term of the restrictive covenant has expired or substantially expired by its own terms during the pendency of the case or on appeal.  *See*, *e.g.*, *Garratt-Callahan Co. v. Yost*, 242 Or. 401, 402 (1966); *Professional Bus. Servs. v. Gustafson*, 285 Or. 307, 310 (1979); *North Pac. Lumber Co. v. Oliver*, 286 Or. 639, 644 (1979); *Inventory Auditors, Inc. v. Miller*, 61 Or. App. 262, 264 (1983).  Similarly, the Ninth Circuit, in interpreting a covenant not to compete under Nevada law, has declined to enforce a restrictive covenant that had expired by its terms, noting:

> Covenants by an employee not to compete have never been especially favored in equity but may be enforced if not unreasonable and if not broader than required for the employer's protection.  There is no reason, however, to enforce a covenant which by its terms is no longer in effect.

ORDER
PAGE - 15

*Economics Lab., Inc. v. Donnolo*, 612 F.2d 405, 409 (9th Cir. 1979).[1]

In *Garret-Callahan*, the Oregon Supreme Court determined that an employer's request for an injunction to enforce a two year non-competition agreement in an employment agreement that, by its terms, would have expired 22 days after the Oregon Supreme Court's decision on the matter was moot since any injunctive order would "be literally useless." *Id.* at 402.

The only Oregon case raised by Defendants regarding an equitable extension is not persuasive. In *Actuant Corp. v. Huffman*, CV-04-998-HU, 2005 WL 396610 (D. Or. Feb. 18, 2005), the Court addressed whether the term of a non-competition agreement may be extended under Oregon law on summary judgment. In declining to extend the term of the non-compete, the court recognized that "[w]hile the law may allow the extension of a non-competition agreement in the proper case, it is only when the court has the benefit of all the facts in front of it that it can determine if the case requires such equitable discretion be exercised." This Court does not have such a benefit. The *Actuant* court also examined two cases from other

---

[1]   Other United States Courts of Appeal have also declined requests to equitably extend a restrictive covenant that has expired on its own terms at the time of appeal. *See, e.g., Aladdin Capital Holdings, LLC v. Donovan*, 438 F. App'x 14, 16 (2d Cir. 2011) (affirming a decision that injunctive relief based upon a restrictive covenant becomes moot upon the expiration of the period specified in the restrictive covenant unless there is language expressly permitting extension); *A-Copy, Inc. v. Michaelson*, 599 F.2d 450, 452-53 (1st Cir. 1978) (overruling the trial court's grant of injunctive relief because the restrictive covenant at issue had expired); *Hodges v. Schinkert Sports Assocs.*, 89 F.3d 310, 312 (6th Cir. 1996) (finding that an appeal contesting a district court's denial of injunctive relief was moot because restrictive term had expired); *Agrigenetics, Inc. v. Rose*, 62 F.3d 268 (8th Cir. 1995) (same); *Curtis Indus., Inc. v. Livingston*, 30 F.3d 96, 97-98 (8th Cir. 1994) (same); *Gaylord Broad. Co. v. Cosmos Broad. Corp.*, 746 F.2d 251, 252-54 (5th Cir. 1984) (same). *Cf Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003) (noting that the district court has power to equitably extend restrictive covenant term due to "year-long delay" in ruling); *Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371-72 (8th Cir. 1991) (affirming a decision to extend a non-solicitation term where employee caused customers to defect).

ORDER
PAGE - 16

jurisdictions, *Presto-X-Co. v. Ewing*, 442 N.W.2d 85, 89-90 (Iowa 1989) and *Padco Advisors, Inc. v. Omdahl*, 185 F. Supp.2d 575, 577-78 (D. Md. 2002) (D. Mar. 2002), in which the courts extended the restrictive covenant terms because the evidence clearly demonstrated that the former employee had repeatedly solicited his former employer's customers to the economic detriment of the former employer.  There is no such evidence in this case.

Accordingly, even if this Court or the Ninth Circuit Court of Appeals were to determine that Mr. Coulston should be enjoined from working for Ocean Beauty for the period of time set forth in his non-compete agreement, this Court finds no reason on the record before it, nor is it persuaded by the authority argued by Defendants, that the time period for such an injunction should be tolled.  As a result, any injunction would expire by the terms of the contract on July 2, 2015.

### H.  Plaintiff's Request for Attorney's Fees

Plaintiffs have requested an award of attorney's fees should they succeed on this motion.  Dkt. #56 at 24.  Defendants have not responded to that request.  *See* Dkt. #60. Because this Court has denied Defendants' Renewed Motion for Preliminary Injunction, the Court will entertain Plaintiffs' fee request.  Accordingly, Plaintiffs shall file a separate motion for attorney's fees as directed below.

### IV.    CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS that:

1.  Defendants' Renewed Motion for Preliminary Injunction (Dkt. #53) is DENIED.

2.  No later than ten (10) days from the date of this Order, Plaintiffs shall file a Motion for Attorney's Fees, noting it for consideration pursuant to this Court's Local Rules.

ORDER
PAGE - 17

The motion shall be supported by documentary evidence reflecting the amount of fees sought, and shall include argument as to the authority upon which such fees may be granted and why such fees are reasonable.   Defendants shall file any Response in accordance with the Local Rules, and Plaintiffs may file a Reply in accordance with the same.

DATED this 25th day of June, 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 18